IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:10CV189-RLV
(5:06CR57-RLV-DSC-2)

| | |
|---|---|
| CARLOS CONJO-BERERA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Motion for Summary Judgment, (Doc. No. 11). Petitioner is represented by attorneys Matthew G. Pruden and Noell P. Tin.

I.      BACKGROUND

On November 14, 2006, the Grand Jury for the Western District of North Carolina returned a three-count Bill of Indictment in which Petitioner Carlos Conjo-Berera was charged in Counts One and Three. (Case No. 5:06CR57, Doc. No. 7: Indictment). Count One charged Petitioner with conspiracy to possess with intent to distribute at least 50 grams of cocaine base and at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A). Count Three charged Petitioner with possession with intent to distribute at least five kilograms of cocaine, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. On December 6, 2006, Petitioner, represented by counsel Charles L. Alston, Jr., waived personal appearance for arraignment purposes and entered pleas of not guilty to the charges contained in

1

the indictment. (Id., Doc. No. 13). After two continuances, the case was calendared for trial on May 29, 2007. (Id., Doc. Nos. 18; 22; 27). On May 8, 2007, the Government sent a proposed plea agreement to Mr. Alston. See (Doc. No. 10-1: Plea Agreement). Petitioner contends that Mr. Alston never told him about this plea offer. Petitioner proceeded to trial before a jury on May 29-31, 2007. See (Case No. 5:06CR57, Doc. Nos. 56; 57; 58: Trial Tr.).

The jury found Petitioner guilty on both counts charged in the indictment. (Id., Doc. No. 58 at 135: Tr. Trans., Vol. III; see also id., Doc. 41: Jury Verdict). On October 7, 2008, the Court sentenced Petitioner to 324 months on each of Counts One and Three, to be served concurrently. See (Id., Doc. No. 79 at 22: Sentencing Transcript; see also id., Doc. 71: Judgment). Petitioner filed a notice of appeal on October 17, 2008, and the Fourth Circuit Court of Appeals affirmed this Court's judgment on November 10, 2009. See United States v. Conjo-Berera, 350 F. Appx. 805 (4th Cir. 2009). Petitioner did not file a petition for writ of certiorari to the Supreme Court. On December 1, 2010, Petitioner filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

The charges against Petitioner arose subsequent to the arrest of Michael Cherry by Statesville Police Department Narcotics Detectives on November 1, 2006. (See Case No. 5:06CR57, Doc. No. 56 at 37-38: Tr. Trans. Vol. I). On that date, officers executed a search warrant at Cherry's residence and found a quantity of cocaine and handguns. Cherry agreed to cooperate with law enforcement and to disclose the sources of his cocaine – both suppliers and distributors. (Id., Doc. No. 56 at 38). Thereafter, on November 6, 2006, working as a confidential informant for Immigration and Customs Enforcement ("ICE"), Cherry met with Ambrocio Aly Orozco and purchased two kilograms of cocaine. (Id. at 41-52). Subsequent to the successful controlled buy, Orozco was arrested and two kilograms of cocaine in pressed brick form were seized. (Id.

2

at 53-54). Orozco identified Petitioner as his supplier. (Id. at 62). Orozco's cooperation led to the arrest of Petitioner at a garage in north Charlotte that same day. (Id. at 62-66; 70-82). With the consent of the garage owner, officers searched the property and found 1.5 kilograms of cocaine, $216,000.00 in United States currency, digital scales, a vacuum sealer, saran wrap, and fourteen previously used kilo-weight cocaine wrappings. (Id. at 88-89; 96-97). When law enforcement arrived at the garage, Petitioner had been standing approximately five feet from a Volvo. (Id. at 79). Inside the Volvo ICE agents found two kilograms of cocaine and a hidden compartment for smuggling. (Id. at 99-100; 102).

Michael Cherry testified during the trial that he knew Petitioner through Orozco and had purchased between 8 and 10 kilograms of cocaine from Orozco. (Id., Doc. No. 57 at 56-78: Tr. Trans. Vol. II). Specifically, Cherry testified that on at least two occasions he complained to Orozco that the powder cocaine he had purchased was not properly converting to crack cocaine. In response, Orozco brought Petitioner to watch Cherry and to ensure that Cherry was properly cooking the powder cocaine into crack. (Id. at 7; 9-10). Additionally, Cherry testified that Petitioner also came to watch Cherry cook the cocaine Orozco had sold him into crack cocaine a few months later. (Id. at 14-18; 55). The jury found Petitioner guilty of all charges. (Id., Doc. No. 58 at 135: Tr. Trans. Vol. III).

In preparation for Petitioner's sentencing, the Probation Office completed the revised final Presentence Investigation Report ("PSR") on October 3, 2008. (Id., Doc. No. 69: PSR). Because Petitioner was found to be responsible for a drug quantity of more than 1.5 kilograms of cocaine and cocaine base, the Probation Officer calculated a base offense level of 38, which base offense level was enhanced by two levels for possession or carrying a firearm during and in relation to the drug conspiracy and four additional levels based on his leadership role in a major

cocaine and cocaine base distribution scheme. (Id. at 7). These enhancements resulted in a total offense level of 44; however, pursuant to U.S.S.G. § 5, Application Note 2, the total offense level was capped at a level 43. (Id.). The Probation Officer calculated Petitioner's criminal history category as a Category I, id., which, combined with offense level 43, yielded a Sentencing Guidelines range of life imprisonment, id. at 9. The Probation Officer specifically noted in the PSR that the statutory range of imprisonment was not less than ten years and not more than life. (Id.). Petitioner lodged objections to the PSR.

On October 7, 2008, this Court conducted Petitioner's sentencing hearing. See (Id., Doc. No. 79 at 2-24: Sent. Tr.). Petitioner, represented by Matthew G. Pruden and Noell P. Tin, challenged the PSR's drug quantity calculations. (Id. at 2-11). The PSR indicated that "[a]ll the drugs involved in this conspiracy were reasonably foreseeable by [Petitioner,]" that Petitioner "was aware that the cocaine being sold to Cherry was being converted to cocaine base," and that "[d]uring this conspiracy, Cherry bought approximately 8.5103 kilograms of cocaine (in brick form) from Orozco through Conjo-Berera." (Id., Doc. No. 69 at 5: PSR). Petitioner contended, however, that he was only responsible for the cocaine base that Cherry converted from powder cocaine in Petitioner's presence. (Id., Doc. No. 79 at 4-5: Sent. Tr.). Petitioner also claimed there was no trial evidence to support a finding that the 8 kilograms of powder cocaine he sold to Cherry through Orozco were actually cooked into crack. (Id.). Petitioner finally claimed that the cocaine seized by ICE before it reached Cherry should not be calculated because those kilograms of cocaine were never converted to crack. (Id. at 10).

This Court overruled Petitioner's objection relating to drug quantity, id. at 10, and found that with an offense level of 43 and a criminal history category I, the guideline range called for life imprisonment, id. at 11. The court granted a two-level downward variance, however, finding

4

that a life sentence was not necessary to serve as a deterrent to others because Petitioner's sentence would be significant even without a life sentence; that Petitioner was primarily involved in powder cocaine, which tended to ameliorate the Guidelines calculations, that he had been responsible to his family; that he had taken advantage of improving himself during pretrial incarceration; and that his attorney, Mr. Alston, had ceased to represent him subsequent to trial and before sentencing. (Id. at 20-22). Sentencing at the low end of the range created by the intersection of criminal history category I and offense level 41, this Court imposed a sentence of 324 months' imprisonment. (Id. at 21-22). Petitioner timely filed a notice of appeal. (Id., Doc. No. 73: Notice of Appeal).

On appeal, Petitioner challenged this Court's exclusion of the prior statement of co-defendant Orozco during Petitioner's trial and this Court's calculation of drug quantity attributable to Petitioner for sentencing purposes. See (Doc. Nos. 10-2; 10-3). The Fourth Circuit affirmed the judgment against Petitioner in an unpublished decision filed on November 10, 2009, holding specifically that "the district court did not abuse its discretion in excluding Orozco's hearsay statement" and "did not clearly err in calculating the quantity of drugs attributable to Conjo-Berera." United States v. Conjo-Berera, 350 F. Appx. 805, 807 (4th Cir. 2009). Petitioner did not file a petition for writ of certiorari to the Supreme Court.

On December 1, 2010, Petitioner filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging that his trial attorney rendered ineffective assistance based on counsel's failure to advise him of his options of pleading guilty or proceeding to trial, together with the potential consequences of each option, and also failed to advise him of any plea offer. (Doc. No. 1 at 7; see also Doc. No. 5: Petitioner's Memorandum; Doc. No. 7: Affidavit of Conjo-Berera).

5

## II. STANDARD OF REVIEW

A. Section 2255

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the record in this matter, including the parties' summary judgment materials, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III. DISCUSSION

The Sixth Amendment right to the assistance of counsel during criminal proceedings

extends to the plea-bargaining process.[1]  As the Supreme Court explained in Hill v. Lockhart, 474 U.S. 52, 57 (1985), the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance claims involving the plea process.  Pursuant to that test, to prevail on an ineffective assistance claim, a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defendant.  Strickland, 466 U.S. at 687, 694.  In the plea context, a petitioner can show prejudice by establishing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 57-59.

Generally speaking, to establish prejudice under Strickland, the petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  When an ineffective assistance claim arises in the plea context, the Supreme Court has said that the Strickland prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill, 474 U.S. at 59.  The Supreme Court has recently observed that where counsel fails to communicate a plea offer, to show prejudice a defendant must show "a reasonable probability [he] would have

---

[1] The Court notes that during the pendency of this motion to vacate, and after the parties submitted their briefs on Respondent's summary judgment motion, the Supreme Court decided Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012), and Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  In Frye, the Supreme Court held that counsel may render ineffective assistance if counsel fails to communicate a formal plea offer to his or her client and if the petitioner can show prejudice.  Frye, 132 S. Ct. at 1408-11.  In Lafler, the Supreme Court held that counsel may render ineffective assistance where counsel causes his client to reject a plea offer by giving the client incorrect legal advice, again provided that prejudice is shown.  132 S. Ct. at 1383-88.  Although Frye and Lafler confirm that criminal defendants have the right to effective assistance of counsel at the plea negotiation stage, they do not alter the general test for ineffective assistance of counsel under the Strickland standard.  See Frye, 132 S. Ct. at 1405; Lafler, 132 S. Ct. at 1384.

accepted the . . . plea offer" and that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012); see also Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012) ("[P]rejudice can be shown if loss of [a] plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.").

In support of his ineffective assistance of counsel claim, Petitioner contends in his sworn affidavit that counsel never discussed with him any plea offer, never explained to him the benefits and/or consequences of pleading guilty as opposed to proceeding to trial, never advised him that he could face life imprisonment, but informed him that he would get about ten years if he lost at trial, and advised him that co-defendant Orozco would testify on his behalf. (Doc. No. 7 at 2). Petitioner also asserts that had he known that he could face a life sentence, he would have entered a guilty plea rather than proceeding to trial. (Id. at 3). Additionally, Petitioner contends that if he had entered a guilty plea, he would have received more than seven years less than the sentence received, and that Michael Cherry's testimony would not have been a factor in the drug quantity used to determine Petitioner's sentence. (Doc. No. 5 at 14-15).

Petitioner's ineffective assistance of counsel claim fails.[2] As Respondent notes, even if counsel provided deficient representation by failing to communicate the Government's plea offer, Petitioner cannot show prejudice under Strickland because he has failed to show that he would have received a lesser sentence under the formal plea offer than he received after his jury trial. Here, the proposed plea agreement included a stipulation to a within-Guidelines sentence and Petitioner was sentenced within the Guidelines range that would have been applicable had he

---

[2] Respondent states in its brief in support of summary judgment that it has diligently attempted to locate Mr. Alston to obtain an affidavit responsive to Petitioner's claims, but that Respondent has been unable to locate Mr. Alston.

pled guilty and received a reduction for acceptance of responsibility. Petitioner claims that by pleading guilty he would have been sentenced at offense level 40 instead of level 41, and therefore would have received a sentence lower than the imposed 324 months. Petitioner further asserts that offense level 40 combined with criminal history category I would have generated a low-end Guidelines sentence of 292 months, plus the potential for a downward variance. (Doc. No. 1 at 8). Additionally, Petitioner maintains that the drug quantity for which he was held responsible would not have been based on Michael Cherry's testimony.

The plea agreement that the Government offered in this case, however, required Petitioner to plead guilty to Count One of the indictment, and included stipulations that the amount of crack cocaine reasonably foreseeable to him was in excess of 1.5 kilograms and that his base offense level would be 38. See (Doc. No. 10-1 at ¶ 1; ¶ 7a; ¶ 7b). This base offense level was the same base offense level calculated by the probation officer based on the drug quantity proven at trial. See (Case No. 5:06CR5, Doc. No. 69 at ¶ 20). Second, the proposed plea agreement provided that Petitioner agreed that the Court could consider dismissed counts and all pertinent information as relevant conduct in determining the sentence. (Doc. No. 10-1 at ¶ 3). This agreement would have required the probation officer to enhance Petitioner's base offense level by two levels because his co-defendant possessed a firearm, and to add four levels for Petitioner's role as a leader in a major cocaine and cocaine base distribution scheme, yielding an offense level of 44. (Case No. 5:06CR5, Doc. No. 69 at ¶¶ 21; 23). Assuming that Petitioner qualified for the three-level reduction based on acceptance of responsibility, his adjusted offense level would have been a level 41.

Finally, the proposed plea agreement provided that the parties "agree[d] that the appropriate sentence [was] one within 'the applicable guideline range' (U.S.S.G. § 5C1.1) and

9

that neither party [would] seek a departure from that range." (Doc. No. 10-1 at ¶ 7f). Offense level 41 combined with criminal history category I generates a Guidelines range of 324 to 405 months. Therefore, if Petitioner had pled guilty pursuant to the proposed plea agreement and if he were sentenced within the applicable Guideline range, he could not have received a sentence lower than the 324-month sentence he received.

In his Reply brief, Petitioner contends that he could have received a lesser sentence if the Court had granted the same downward variance that the Court granted after trial. However, the possibility of a downward variance is merely speculative, which is not enough to satisfy the prejudice prong of Strickland. That is, Petitioner has not met his burden of showing that, absent counsel's alleged deficient performance, there is a reasonable probability that Petitioner would have received a lesser sentence if he had accepted the Government's proposed plea agreement. Moreover, Petitioner's additional contention that he may possibly have received a sentence reduction based on his cooperation if he had pled guilty is also speculative and is not enough to show prejudice under Strickland.

Because Petitioner has failed to demonstrate that, in the absence of his counsel's alleged deficient performance, and if he had pled guilty pursuant to the Government's proposed plea agreement, there is a reasonable probability that he would have received a sentence less than the 324 months he received, Petitioner has not met his burden of showing ineffective assistance of counsel.

In sum, Petitioner's ineffective assistance of counsel claim is without merit.

IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition and grant Respondent's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Respondent's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: September 3, 2013

Richard L. Voorhees
United States District Judge